### AND

## *THE CORRECTION OF ERRORS*

### OF THE

## STATE OF NEW-YORK;

### IN JANUARY, FEBRUARY, MARCH, AND APRIL, 1822.

—◦✦◦—

PATRICK MANAHAN, Plaintiff in Error,
*against*
JAMES GIBBONS, JAMES MAHER, THOMAS DAWSON, THOMAS
MOUNSEY, and JOSIAH KERR, Defendants in Error.

IN ERROR to the Supreme Court. For the facts in the case, and the judgment of the court below, see *ante* p. 109. 112. S. C.

. *Henry*, for the plaintiff in error. 1. It is a fact conceded in the court below, that the defendants have pocketed the plaintiff's proportion of the money. Must they not, then, in this equitable action of *assumpsit*, be made to refund what, *ex equo et bono*, belongs to the plaintiff?

The evidence in the case shows, that the defendants received more than sufficient to satisfy them as endorsers, and enough to satisfy the plaintiff. There were six creditors, and no one appearing to be entitled to more than an equal share, the plaintiff had a right to claim one sixth.

2. The defendants were *joint* receivers of the money.

*Assumpsit for money had and received, does not lie against two defendants, without showing a joint contract, or that both received the money. Where S. being indebted to M., G., D., & K. severally, confessed a judgment to them jointly, to secure their respective debts, and the property of S. having been sold under an execution issued on the judgment, and the proceeds, being less than the amount of all the debts, G., D., & K. divided the money between them, to the exclusion of M.; and Held that M. could not maintain an action for money had and received against G., D., & K., jointly, to recover his proportion of the proceeds of the sale of the property of S. under the judgment and execution.*

IN ERROR.
........
ALBANY.
February, 1822.

MANAHAN
v.
GIBBONS.

They divided the booty among themselves, without disclosing how much each received. It is on the ground of this joint receiving of the money, that they are jointly answerable; not on the ground of the disposition made of it afterwards. The defendants, in this transaction, in reference to the joint fund created by the judgment, are partners. The money was abstracted by the defendants from a joint fund, and distributed among themselves. The plaintiff is not bound to sue each of them, in a separate action, for the amount he may have received, to his separate use.

The plaintiff might have sued *G.* alone, for the *tort* in discharging the execution, and then there would have been no contribution. (8 *Term Rep.* 186.) Now, this action against all the defendants jointly ought to be favoured, as it secures to them the right of contribution, as against each other. The case of *Osborne and others* v. *Harper*, (5 *East*, 228.) does not support the position, that in the present case, there had not been a payment out of a joint fund, so as to render the defendents jointly liable. Nor is the position cited from *Chitty*, (1 *Chitty Pl.* 31.) applicable, for here a joint receipt of the money has been proved.

There is no hardship in this case, because some of the defendants have become insolvent. The defendants received the money, and chose to divide it among themselves, without consulting the plaintiff, or regarding his rights; and they ought to be answerable jointly for his share. The law and equity of the case are clearly with the plaintiff. The suit is equivalent to a bill in equity.

*B. F. Butler,* contra. The writ of error, in this case, having been brought on a bill of exceptions taken to the opinion of the judge on a point of law as to the *joint* liability of the defendants, the evidence, or matters of fact, are not to be discussed here. (5 *Johns. Rep.* 467. 8 *Johns. Rep.* 495. 14 *Johns. Rep.* 307.) But if the evidence was reviewed, it would appear that the defendants had received less than their shares.

[The CHANCELLOR. It is immaterial how much money has been received; for if this court should be of opinion,

on the question of law, that the defendants are jointly liable, there must be a *venire de novo*.]

IN ERROR.
........
ALBANY,
February,1822.

MANAHAN
V.
GIBBONS.

The only question for this court to decide, is the dry point of law, whether the defendants are *jointly* liable to the plaintiff, in this action. It is a well settled principle, that in an action on a joint contract, a joint liability must be shown. Contracts are express or implied. Implied contracts are such as are dictated by justice, and which the law, therefore, presumes every man undertakes to perform. (1 *Comyn on Cont.* 5.) The plaintiff, in the present case declares as on an express promise, and though he is not bound to prove an express promise, he must show such a state of facts, as, on principles of natural justice, the law will imply a promise. The plaintiff must show that the defendants had a community of interest, or were partners in the money received. (*Bull. N. P.* 129. 1 *Chitty's Pl.* 31. 1 *Esp. N. P. Rep.* 361. 2 *Term Rep.* 366. 2 *Taunt. Rep.* 49. 2 *Johns. Rep.* 213. 4 *Johns. Rep.* 23. 5 *Johns. Rep.* 176.) In *Sheriff* v. *Wilks* and others, (1 *East,* 48—52.) *Lawrence,* J. observed, "The plaintiffs in this action declare upon a promise by three defendants, and, consequently, to entitle themselves to recover, they must prove a promise, either express or implied, binding upon all three." A joint assumpsit cannot be implied, unless the money has been received on joint account, or for the joint interest and benefit of the defendants. Again, on the other hand, plaintiffs cannot maintain a joint action, unless they have a joint interest. (1 *Chitty's Pl.* 8. 3 *Bos. & Pull.* 235. 5 *East,* 225. 2 *Term Rep.* 282. *Doremus* v. *Selden, ante.* 213.) Suppose, then, that the plaintiff, *Manahan,* had received the whole money, could the defendants have maintained a joint action against him? Clearly not. Each must have brought a separate action, to recover his share of the money. (8 *Cranch's Rep.* 50.) The same rule applies in actions of covenant, (5 *Co.* 19.) or of debt. (*Yelv. Rep.* 25. 13 *East,* 537.) The position of the plaintiff's counsel proves too much. If the parties were partners, then *Manahan,* being a joint partner, could only sue his copartners in equity, or by an action of account. (2 *Johns. Cases,* 329. *Doug.* 371. 1 *Hen. Bl.* 37.

9 *Johns. Rep.* 470.)   But they were not, in any sense, part-ners.   The defendants had only *aliquot* shares in the judg-ment.

Reliance seems to be placed on the joint direction given to the sheriff.   That was no injury to the plaintiff.   There was no more property; and the plaintiff himself was a party to the direction, for his attorney assented to it.   Again; the defendants could not discharge the execution, as regarded the plaintiff, or to his prejudice. (5 *Co.* 7. 19.   2 *Evans' Pothier,* 60.) The Supreme Court, on application to them, would have set aside the discharge, as regarded the plaintiff, and direct-ed the sheriff to proceed.   Again; if the plaintiff has been injured by the act of the defendants in discharging the execution, his remedy is for the *tort,* not on an *assumpsit.*   To maintain this action of *assumpsit,* the plain-tiff must show, that the defendants did, in fact, receive the money. (11 *Johns. Rep.* 464.   3 *Mass. Rep.* 403.)   The act of discharging the execution was not a receipt of money. The remedy, if any, must have been an action in the case. Though the plaintiff may waive the tort, and proceed on the implied contract, yet, in that case, he will be bound by all the rules applicable to an an action arising *ex con-tractu.*   (12 *East,* 452.   2 *Evans' Poth.* 66.)

If there was a joint interest in the five defendants who distributed the money, then, before distribution, there would have been a right of *survivorship,* which will hardly be admitted.   There was, in truth, in no stage of the pro-ceedings a joint receipt of the money.   Each of the de-fendants took an *aliquot* share.   There was no objection to the bringing of separate suits ; for the plaintiff might have easily ascertained how much each defendant had received, or he might have filed a bill in the Court of Chancery.

Not a single authority has been cited, which shows that the decision of the Supreme Court is erroneous. *Buller,* J. in *Stratton* v. *Rastall,* (2 *Term Rep.* 366. 370.) speaking of the action for money had and received, observes, that "it was to be remembered that it was extended, on the principle of its being considered a bill in equity.   And, therefore, in order to recover in this form of action, the party must show that he has equity and conscience on his

side, and that he could recover in a Court of equity." Now, suppose that the plaintiff had filed his bill in chancery, would not that Court have decided that each defendant should pay what he had actually received, and no more? But the plaintiff seeks, by the present suit, to compel *G.*, the only solvent defendant, to pay above 1,100 dollars, when he has, in fact, received only about 400 dollars.

IN ERROR.
........
ALBANY,
February, 1822.
MANAHAN
v.
GIBBONS.

*Henry*, in reply, insisted that the defendants had received all that was due to them, and more. The sheriff paid the money in a lump, and all the defendants signed the discharge. The attorney of the plaintiff did not sign the paper. The defendants, then, jointly received the money. We do not object to their distributing their own money, but we say, that they had no right to divide our money. The money of the plaintiff was jointly received by them, and they must be jointly responsible. Suppose the defendants had never distributed the money, or had thrown the whole into the *Hudson*, would not they be jointly liable? On the doctrine of the defendants' counsel, the plaintiff would have no relief. In *Jacques* v. *Whitcomb* and others, 1 *Esp. N. P. Cases*, 361.) the only case cited that has any bearing on the question, the plaintiff failed to prove a joint receipt of the money.

It is objected, that if this suit is maintained, one defendant may by obliged to pay the whole. He might, in the first instance; but he would have right of contribution against his co-defendants. And *Gibbons*, who was the acting person in the business, and who, contrary to the wishes of the other defendants, excluded the plaintiff from the division, ought, *ex equo et bono*, to pay the whole. The law abhors multiplicity of suits; the plaintiff has, therefore, brought one action. An action on the case, *ex delicto*, would, no doubt, lie, but it would have been against all the defendants. It is admitted that the plaintiff may waive the *tort*, and bring assumpsit.

The CHANCELLOR. The plaintiff sued the five defendants jointly, and charged them with a joint promise to pay him for money by them had and received to his use, and

IN ERROR.
........
ALBANY,
February, 1822.

MANAHAN
v.
GIBBONS.

for money lent and advanced by him to them. The sole question in the Court below was, whether the plaintiff, upon the trial of the issue, made out in proof, his charge of a joint contract, rendering the defendants jointly liable for 1,067 dollars, received to his use. The learned judge ruled, that the plaintiff had not made out his case of a joint undertaking, and with that direction left the cause to the jury, who found a verdict for the defendants. That decision of the judge at the trial was brought before the Supreme Court, upon a bill of exceptions, and affirmed, and the same point is now submitted to the consideration of this Court.

The substance of the case is, that a judgment by confession was entered up in the Supreme Court, on the 24th of *October*, 1814, in favour of the present plaintiff and the present defendants, against *Samuel Sweasey*, and *William Kearney*, for the sum of 10,000 dollars of debt, and 14 dollars and 42 cents, of costs. The judgment was given to secure the defendants, who had severally become responsible, as endorsers, for *Kearney & Sweasey*, and, also, to secure a debt due from *K. & S.*, to the plaintiff. These defendants were separate endorsers, on separate notes, and for different amounts. Though the plaintiff and the defendants were all united in the judgment confessed in their favour, yet they had distinct and different interests in the judgment. Each individual was separately concerned, to the extent of his *aliquot* share or proportion of the judgment. There is a contradiction in the testimony, as to the order in which the plaintiff and the defendants were to be paid out of the proceeds of the judgment, yet I concur entirely in the opinion of the Supreme Court, that the plaintiff and the defendants stood upon an equality of right, as to their respective interests in the judgment, and were to be paid out of the moneys collected under it, in rateable proportions. If the proceeds of the judgment were not sufficient to satisfy the entire demand of all of them, these proceeds were to be apportioned between them in a *ratio* to the amount of their respective demands. This conclusion is according to the weight of testimony, and it agrees also with the natural equity of the case.

IN ERROR.
........
ALBANY,
February, 1822.

MANAHAN
v.
GIBBONS.

A part only of the judgment was collected. The sheriff collected on the execution 1,664 dollars and 64 cents in cash, and other property was sold, and the proceeds came to the possession of the defendants. The precise amount of money and property collected and received, under the judgment, does not appear. When the defendants, by their certificate of the date of the 2d of *June*, 1815, stated, that the property of *Sweasey & Kearney*, taken in execution, was sold, and the amount settled, to between 4 and 500 dollars, I should infer that they meant to be understood that there was only a *deficit* on the execution of between 4 and 500 dollars. The amount so received was distributed among the defendants rateably according to the proportion of each one's demand. The sum directed to be levied on the execution was 5,017 dollars and 93 cents, with interest from the 22d of *October*, 1814; and if all was settled on the 2d of *June*, 1815, to between 4 and 500 dollars, (say 450 dollars,) it is easy to compute how much each of the defendants received, on his rateable proportion of the proceeds of the judgment, to the entire exclusion of the plaintiff.

The distribution of the proceeds of the judgment among the several defendants was made in the presence of the sheriff, and of Mr. *Willet*, the attorney to the execution. Some of the defendants objected to the exclusion of the present plaintiff, from his share of the proceeds, but they were overruled by others, and each of the defendants received not only his own just proportion of these proceeds, but also his rateable proportion of the plaintiff's share.

The plaintiff has sued all the defendants jointly, to recover his share of the proceeds, and he charges them as upon a joint promise to pay him; and the question is whether the facts will warrant an inference in law, of such a joint contract.

The plaintiff might have filed his bill in chancery against all the defendants, and united them in one suit, and made each one of them severally account for what he received, belonging to the plaintiff. Each one would have been held accountable for his own share of the plaintiff's money; but he would not have been held accountable for what his associates received, or for more than what he himself received,

IN ERROR.
........
ALBANY,
February, 1822.

MANAHAN
v.
GIBBONS.

because the defendants were not to be considered as joint partners. Instead of taking this course, the plaintiff has been advised that the law would raise, from the facts in the case, *a joint promise*, on the part of the defendants, to pay the plaintiff; and the consequence would be, that in that case, each one of them would be answerable to him for the whole demand, and the risk of the insolvency of some of the defendants would be transferred from the plaintiff to the solvent defendant, whoever he might be. If the plaintiff could have made out a case of an implied joint promise to pay his share, (and if there be any such promise in the case, it must be an implied one, for no express promise is shown or pretended,) he would then have gained an eminent advantage, because he then would have been able to charge any one of the defendants, whom he might have selected under his judgment and execution, with his whole demand, and have left that one to seek contribution and indemnity, as well as he could, from the other defendants. Perhaps this would have been just in respect to some of the defendants, who pressed for an exclusion of the plaintiff from any participation in the money, and on grounds which may have been assumed merely for the occasion; But it would have operated oppressively as to others of the defendants, who dissented, at the time, from the exclusion of the plaintiff, and were probably induced to acquiesce against their better judgment, by the superior authority or influence of others.

I do not mean, however, to discuss, in this place, or hazard any opinion on, the motives or demerits of the defendants, in their division among themselves of the plaintiff's share of the judgment. They might have had, for aught we know, justifiable motives for their conduct. They are not sued as trespassers, or for a malfeasance, or charged with any act arising *ex delicto;* and, therefore, the guilt or innocence of the defendants, collectively or individually, was not put in issue in this suit, nor ought they to receive harm by any inference of that kind, because they were not so charged. The plaintiff has waived, by the form of his action, all complaint of misfeasance, all accusation of tort, or of bad or fraudulent intention. He is content to admit, that the defendants may

IN ERROR.
........
ALBANY,
February,1822.
MANAHAN
v.
GIBBONS.

have received and apportioned his money among them by mistake, or upon a consideration which happened to fail, and he only calls upon them to refund what, in equity and good conscience, they ought to refund, and nothing more. That each of the defendants ought to refund, with interest, the portion which he received of the plaintiff's money, there can be no doubt; but whether any one of them whom the plaintiff chooses to select, ought to refund for all the rest, and become, as it were, a surety for all the rest, is a very distinct question, and will depend upon the fact whether the defendants were, in respect to this transaction, jointly responsible, as upon a joint promise. If they were not, then the charge of the judge at the trial was correct, for the plaintiff having laid a joint promise in his declaration, he was bound to prove it at the trial, or be nonsuited.

It may be stated as a clear and settled rule of law, that a plaintiff cannot unite in one suit, distinct and separate claims, against different persons. There must be a joint contract or a joint promise, express or implied, shown at the trial, in actions *ex contractu* against two or more persons, or the plaintiff will fail. This rule is perfectly just, for otherwise two or more defendants would be rendered responsible for each other, though they never united, or intended to unite, in a joint contract. In actions *ex delicto*, as trespass, assault and battery, &c. the policy and the rule of law is different, and each joint trespasser is responsible for all the damage. One defendant may be found guilty, and another acquitted; but in actions *ex contractu*, a verdict cannot be given against one defendant without the others. A promise, either express or implied, binding on all the defendants, must be proved at the trial; and though the transaction may intrinsically partake of the nature of a tort, yet if the plaintiff elects to waive it, and so treat his demand as founded upon contract, it will be subject to all the consequences of a joint cause of action. (*Buller's N. P.* 129. 1 *East*, 52. 5 *Johns. Rep.* 162. 176. 1 *Chitty on Pleadings*, 8. 31. and the cases there cited.)

Putting all idea of tort out of the question, I have not been able to perceive how these defendants can be charged jointly, as upon a joint undertaking to refund. They did not re-

ceive the money in a joint character. It was received by them according to their respective rights, and those rights were not joint, but distinct and separate rights. There was no community of interest between them. Their demands upon *Sweasey & Kearney* were distinct, and arose from different sources. Each had his separate interest in the judgment, and that interest was in unequal proportions, and founded on distinct titles. They were not responsible for each other's acts in relation to the fund, for the consolidation of their respective interests in the judgment did not create any partnership between them, any more than if they had employed a broker to purchase a lot of tea, out of which each was to receive his distinct and specified share. To infer a joint *assumpsit*, the money must have been received on joint account, and for joint benefit. The fact is directly otherwise. The money was received and divided by them, on the foot of their separate interests in the judgment, and each person took what he claimed as his distinct share and proportion of the judgment. The error was that each person took more than his *aliquot* part, because he took not only his own rateable portion, but his rateable share of the portion which ought to have been reserved for the plaintiff. The excess which each defendant received, was, in judgment of law, received to and for the use of the plaintiff; but I am not able to perceive upon what principle the law will raise a joint *assumpsit*, or that the defendants jointly assumed to pay for the excess which each one separately took. The facts will warrant the legal inference that each defendant assumed to pay what he had unduly received, but not to pay for what others, with whom he had no community of interest or partnership, had unduly received.

The counsel for the plaintiff appeared to rely upon the inference to be drawn from a joint receipt of the money. If that fact had been distinctly made out in proof, I am not prepared to assent to the conclusion which the counsel would draw from it; but the proof does not make out the fact that the money was jointly received by all the defendants. That was not the true character of the transaction. There is no joint receipt produced. The certificate of the 2d of *June* does not state that the amount received under the execution had been jointly received. The sheriff says, that the

IN ERROR.
........
ALBANY,
February, 1822.
⌣⌣⌣
MANAHAN
v
GIBBONS.

amount collected under the execution was paid over to the defendants ; but how paid over ? It was distributed among the defendants according to the amount of their separate claims, and both the sheriff and the attorney were present at the distribution. When he says the money was paid to them, he must mean, that it was paid to them according to the distribution. It was paid to them distributively, each taking his *aliquot* part.

This was the legal effect of the transaction, whatever might have been the form it assumed. Whether the money was thrown down upon the table, in the presence of all, or whether it was previously handed over to one of the defendants, as an agent or trustee for all concerned, is perfectly immaterial. One of the witnesses says, each defendant " took his proportion;" and in good sense, and according to the real intention of the parties, and the substance and truth of the case, the money was not otherwise received by the defendants, than by each taking and appropriating to himself what was understood to be his proportion. The defendants were not strictly joint receivers, and the proof would not have warranted the jury to have drawn such a conclusion.

But even if it were to be admitted that the defendants had joined in a receipt for the money, yet if it was in fact received by one or more of them, for the immediate purpose of distribution, according to their unequal interests in the judgment, and the distribution actually took place, the defendants could not be held jointly responsible in this action for money had and received. They would still only be responsible separately, for what each separately received, belonging to the plaintiff. The receipt would connect itself with the subsequent distribution, and be explained by that circumstance.

The effect of a joint receipt of money, in order to render the persons jointly liable, has been very frequently discussed ; and it is now settled that the circumstance of a joint receipt is not conclusive ; and that unless the money was placed under the control, and became subject to the disposition of all the parties to the receipt, the party who in fact received the money, shall alone be answerable.

In *Stratton* v. *Rastall & Avarns*, (2 *Term Rep.* 366.) the

IN ERROR.

ALBANY,
February, 1822.

MANAHAN
v.
GIBBONS.

action was the same as this. It was for money had and received, and money lent. The defendants signed a joint receipt for the consideration money in a deed. It was known that *R.* had not in fact received any part of the money, though both had joined in the receipt. On this case, Mr. J. *Buller,* observed, (and his opinion was the governing one in the cause,) that the action for money had and received was extended on the principle of its being considered like a bill in equity, and the plaintiff must show he has equity and conscience on his side, and that he could recover in a court of equity. The plaintiff, he said, could not recover in a court of equity against *R.,* for equity distinguishes between the persons who join in a receipt, and him who actually receives the money. The receipt is not conclusive against him. In conscience, he only who received the money ought to be obliged to pay it back; and a court of equity would inquire in this case whether the party had recived the money or not. If a court of equity would give the plaintiff no relief, we ought not to permit him to recover in an action founded upon equitable principles. The receipt must be taken with all its concomitant circumstances. In reality, the money was not received by the defendant, *R.* to the use of the plaintiff, nor lent to the defendant, *R.* So that neither in strict law, nor upon equitable principles, can the plaintiff recover against the defendant, *R.* And judgment was given for the defendant in the joint suit against *R. & A.*

The case I have cited from the Court of *K. B.* is exceedingly analogous, and a very strong authority against this present action. Here is not even the joint receipt which existed in the other case, and here neither of the defendants received the entire sum which the plaintiff claims; and it is not equitable that either should be obliged to pay the entire sum, or more than he actually received. In a court of equity the plaintiff would not recover from either defendant any more than that share of the plaintiff's money which each defendant received and appropriated to himself.

The action before us is an equitable action, and governed by principles of equity; and if we examine the course of decisions in chancery, we shall perceive the rule to be, that a joint receipt of money does not conclude the parties, and

that equity looks to the party who in fact received and appropriated the money to himself.

IN ERROR.
.......

ALBANY,
February, 1822.

MANAHAN
v.
GIBBONS.

In *Townley* v. *Chalenor*, (*Cro, L.* 312.) which was as early as 9 *Charles* I. and in which case the Lord Keeper called in the assistance and advice of the judges at law, it was held, that where two trustees joined in acquittances of rents, yet each trustee should not be answerable for more than came to his hands. He should not be answerable for the moneys which were actually received by his co-trustee, though that other was not able to pay.

The next case which I shall notice on this point, is that of *Fellows* v. *Mitchell & Owen*, in 1705, (2 *Vern.* 515. 1 *P. Wms.* 81.) in which Lord *Cowper* held, that to make two trustees who had joined in a receipt answerable for each other, and for money which the other received, seemed to be against natural justice, unless it could not be distinguished or known what proportion each had received ; in which case, of necessity, both must be charged with the whole. Afterwards, in *Churchill* v. *Hobson*, (1 *Salk.* 318. 1 *P. Wms.* 241.) Chancellor *Harcourt* declared the same doctrine, and held that if two trustees join in a receipt, and only one receive the money, he only shall be liable. He admitted that the rule was different as to executors, so far as creditors were concerned ; and this difference he contended existed only at law, and not in equity : for in equity, executors were not chargeable merely for joining in a receipt, but only for the actual receipt of the money. The same doctrine that one trustee shall not be answerable for the money received by another, though they join in the receipt, was laid down in the case of the *Attorney General* v. *Randall*. (3 *Eq. Ca. Abr.* 742.) But in *Westley* v. *Clarke*, (1 *Eden's Rep.* 375. 1 *P. Wms.* 83. note.) Lord *Northington*, in a great degree, broke down the old distinction, which made executors answerable for joint receipts, each *in solido*, and trustees answerable only in proportion to what each actually received. He held, that the distinction was not very wisely taken ; for a joint receipt would charge trustees, *each in solido*, if there be no other proof in the case ; and the general receipt of executors might be so far rebutted by other circumstances as to make him only liable who actually

IN ERROR
........
ALBANY,
February, 1822.

MANAHAN
v.
GIBBONS.

received the money. A joint receipt given by executors, was only stronger proof of their having all received the money, than that of a joint receipt given by trustees, because conformity required both to join in the one case, and not in the other. I do not see, he observed, any ground for a court of conscience to say, " I will make you liable for the whole money, although you never received a farthing of it, merely because you have joined in a formal receipt." The receiving the money, and signing the receipt, were separate and distinct acts, and the latter was only, as far as it goes, evidence of the former.

From that time forward, the only discussion and difficulty in the Courts of Equity seem to have been, how far the old rule, that executors who join in a receipt were each answerable for the money, or this relaxation of the rule, should ultimately prevail. We are not interested at present in that discussion. Perhaps the true principle to be extracted from the cases is, that a trustee shall not be charged with money which does not actually come to his hands, though he join in a receipt of it, if that fact can be clearly ascertained. But if that fact be left doubtful, the circumstance of joining in the receipt would be evidence of it; and it is still stronger evidence in the case of an executor, that the assets were placed under the control of both, though even in the case of executors, a joint receipt is not conclusive evidence against the one sought to be charged. (For the cases establishing or admitting the old rule, that a joint receipt binds and fixes executors and not trustees, see *Gill* v. *Attorney General, Hard.* 314. *Munell* v. *Cox & Pitt,* 2 *Vern.* 570. *Aplyn* v. *Brewer, Prec. in Chan.* 173. *Belcher* v. *Parsons, Amb.* 218. *Leigh* v. *Barry,* 3 *Atk.* 584. *Sadler* v. *Hobbs,* 2 *Bro.* 114. *Scurfield* v. *Howes,* 3 *Bro.* 91. *Chambers* v. *Minchen,* 7 *Vesey,* 186. *Brice* v. *Stokes,* 11 *Vesey,* 319. *Lord Shipbrook* v. *Lord Hinchinbrook,* 16 *Vesey,* 479. For the cases that admit the doctrine of Lord *Northington,* in *Westley* v. *Clarke,* see *Hovey* v. *Blakeman,* 4 *Vesey,* 596. *Joy* v. *Campbell,* 1 *Sch. & Lef.* 341. *Doyle* v. *Blake,* 2 *Sch. & Lef.* 230.)

If we apply the acknowledged doctrine of the Courts of Equity to the present case, we shall perceive, at once, its

IN ERROR.
........
ALBANY,
February, 1822.

MANAHAN
v.
GIBBONS.

great bearing and pressure upon the argument urged in support of the plaintiff. It was contended, that the defendants were in form joint receivers, and this was to be inferred from their joint certificate of the 2d of *June*, to the sheriff, and from the testimony of the sheriff, that the proceeds of his sales were paid over to the defendants. But this fact he afterwards explains, when he says the money was paid over to them, " and distributed amongst them." He was present a part of the time at the distribution; and that it was made according to their respective claims is abundantly proved. As to other property, the sheriff says, it was sold and disposed of by the defendants, " or some of them." From the other testimony in the cause, there remains no doubt, that all the proceeds raised or collected under the judgment and execution were distributed among the defendants in the same ratio as the money raised by the sheriff's sales. The fact may be deemed clearly established, that no part of the property of *Sweasey & Kearney*, or the proceeds of it, came to the possession and use of the defendants jointly, or in any other way, mode, or degree, than distributively, according to the relative proportion of their demands.

My conclusion upon this case is, that the testimony does not warrant the inference of a joint contract or undertaking of the defendants, and that they are not, either on strict rules of law, or upon principles of equity, answerable to the plaintiff *in solido*, but only separately, or each one to the amount which he himself received of the plaintiff's proportion of the judgment.

I am, accordingly, of opinion, that the judgment of the Supreme Court ought to be affirmed.

This being the opinion of a majority of the Court, (BARSTOW, MILES, HUNTINGTON, and VIELE, *Senators*, dissenting,) it was, thereupon, ORDERED, ADJUDGED, and DECREED, that the judgment of the Supreme Court be affirmed; &c. and that the record be remitted, &c.

*April 1st.*

Judgment of affirmance.