BANKS *v.* THE EXECUTORS, &c., of CHARLES WILKES.

A trustee is not liable for the waste or dereliction of his co-trustee, which was not occasioned by any act or agreement of the former.

A testator held a bond and mortgage in his own name, for moneys invested by him for C. By his will he appointed four executors, who all qualified, and who consented that one of their number, H., should take the management of the estate. The bond and mortgage came to the hands of the executors, with the other effects of the testator, and passed into the custody of H., as the acting executor. C. was aware of this disposal of the securities, but did not object or dissent. H. subsequently received a large sum on the bond and mortgage, expended it for his own use, and died without any property. *Held*, 1. That on the death of the testator, his executors succeeded him in the trust, and held the bond and mortgage as C.'s trustees. 2. That the permitting H. to have their actual custody, was not a breach of trust. And 3. that C. could not recover from the other executors the amount received and squandered by H.

Feb. 20; October 21, 1845.

THE bill was filed in January, 1842, by William Banks, as the administrator of James Campbell, and as the executor of Margaret Campbell, deceased, against Janet Wilkes, executrix, and George Wilkes and Hamilton Wilkes, surviving executors of Charles Wilkes, deceased.

The facts established, upon which the decision of the court was made, were these :—

Charles Wilkes, for many years, was the banker of James Campbell, residing in New Jersey, and as his agent, invested

moneys from time to time.   In 1831, James Campbell died, leaving a sister, Margaret Campbell, his sole legatee and executor. Mr. Wilkes continued to stand in the same relation to Miss Campbell, as he had to her brother, until his own death in the summer of 1833.   At that time he had in his hands, invested for Miss C., (the securities being in his name,) $26,000, of which $15,000 stood in the bond and mortgage of Samuel Wilkeson.   After his death, his executrix and executors took out letters testamentary, and then, pursuant to a request of the testator, arranged among themselves, that Horatio Wilkes, one of their number, should have the active management and charge of the estate.   Miss Campbell's securities, thus came into his custody, being found among the assets of C. Wilkes.   Annual accounts were rendered to Miss C. by Horatio W., showing the amount and investment of the fund. The accounts were headed " with the estate of Charles Wilkes," and signed by Horatio as executor, but with each was his written acknowledgment of holding the securities for her, which stated that *he* held them, and that they were in *his* possession.   She received the income from him in sums of $200 or $300, as she wanted it, and gave receipts, all of which run in his name without any addition of executor.   And when he drew checks in her favor, they were signed in his individual name.   Miss Campbell was intimate with the family of the testator, and occasionally spent a day or two at their house.   She never made any objection, or expressed any dissent to the course taken with the custody and management of her securities.   In November, 1838, it transpired that Horatio W. in May, 1835, collected $6000 of the principal sum secured by S. Wilkeson's bond and mortgage, and used it for his own purposes, or invested it in some speculation whereby it was wholly lost.   Miss Campbell thereupon called on the other executors of C. Wilkes, to transfer all the remaining securities, and to pay her the amount thus lost by Horatio.   They consented to and did join in a formal assignment of the existing bonds and mortgages, belonging to Miss C., reserving the question of liability for the $6000 received of Wilkeson, and they declined to pay any part of that sum.

Horatio Wilkes died in March, 1840, intestate and destitute of property.   Miss Campbell died on the sixth of April following,

leaving a will by which Mr. Banks was appointed her executor, and he became the administrator *de bonis non* with the will annexed, of James Campbell.

The bill prayed for an account and settlement of the trust fund originally held by Charles Wilkes, and insisted that his surviving executors were liable to make good the sum received by Horatio Wilkes.

The cause was argued in writing with much fulness on all the questions presented by the pleadings and proofs.

*Richard H. Ogden*, for the complainant.

*Charles E. Butler*, for the defendants.

The Assistant Vice-Chancellor.—At the time of the death of Charles Wilkes, the bond and mortgage of S. Wilkeson, which ultimately became the cause of this controversy, although payable to him, were clearly identified and distinguished as being the property of Margaret Campbell ; and after his death they were recognized and treated as hers by his representatives.

The securities came to the hands of his executors, with the testator's effects upon his death.

It is agreed on all hands, that Mr. Wilkes held the bond and mortgage, *in trust* for Miss Campbell. And it appears to me to be quite immaterial, whether this trust was express or implied, direct or constructive.

In *Trecothick v. Austin,* (4 Mason's R. 16, 29,) the question was whether a statute of limitations, barring suits against executors in their capacity as such, applied to a transaction similar to this in principle ; and it was decided that it did not. Judge Story held, that "if at the time of the testator's death, there is any specific personal property in his hands, belonging to others, which he holds in trust, or otherwise, and it can be clearly traced and distinguished from the testator's own ; such property, whether it be goods, securities, stock, or other things, is not assets ; but is to be held by the executor, as the testator himself held it." And, " coming into the executor's hands, as the general represen-

tative of the personalty, he is by law clothed with the same character of trustee of the property, and succeeds to its obligation."

It is insisted on behalf of the defendants, that by the statute relative to uses and trusts, the trust in question upon the death of Mr. Wilkes, devolved upon the court of chancery.

I think the statute is not applicable. It relates exclusively to real property, and its provisions are not extended to personalty, except in limitations of future or contingent interests in such property.

The interest of Miss Campbell in this trust was a present and vested interest, and does not fall within that class of limitations.

If the other construction were correct, and the trust devolved upon the court of chancery; it would not warrant the executors in delivering the fund to any person other than the beneficiary, or a new trustee appointed by the court.

The defendants state in their answer, that shortly after Mr. Wilkes's death, the securities belonging to Miss Campbell were taken possession of by Horatio Wilkes as her trustee in fact, or agent, and were from thenceforth kept and retained by him exclusively in that capacity.

The complainant, denying that Horatio W. was the sole trustee or agent of Miss C. at any time, argues that the act of placing these securities in his hands, or suffering him to take the possession of the same, was a breach of trust on the part of his co-executors, which subjects them to all the consequences flowing from his control over the securities.

It is true Horatio Wilkes, in conformity with his father's request, and from its fitness in reference to the situation and pursuits of the other executors, became the acting executor and manager of the estate. All assented and agreed to this arrangement; but I do not understand from the testimony that his co-executors divested themselves of their legal control over the property, nor but that they could assume its management if they thought proper. I have no doubt but that Miss Campbell's securities, in the first instance, passed into the hands of Horatio Wilkes, in consequence of this family arrangement, with the mass of the personal estate of Charles Wilkes.

But I do not discover any breach of trust in this circumstance. There is no proof that the defendants agreed to intrust the control and management of Miss C.'s securities to Horatio, or that they interfered in any manner in regard to them. The defendants were simply, passive; suffering them to pass into his custody.

After he had thus received them, the executors stood in this position. They were the trustees of the bonds and mortgages of Miss C., and one of their number, Horatio Wilkes, had the same in his keeping. The four trustees could not all have the manual possession of the securities. Nor could any joint possession of them prevent one of their number from receiving payment from the mortgagors, without the concurrence or knowledge of the others, if he chose so to do.

The circumstance of the individual custody of the trust fund, by one of the trustees, is not therefore to be deemed a breach of trust in the others. (*Sutherland* v. *Brush*, 7 J. C. R. 17, 22.)

If the rule of law were otherwise, it would not apply to this case, because Miss Campbell was informed, when she received the first account current from Horatio, a few months after his father's death, that he alone had the bonds and mortgages in his possession, and she did not object to that disposition of them or intimate any dissent. Irrespective of the question as to his becoming the sole trustee, her silence after this information, must be deemed an acquiescence in Horatio's being the custodian of the securities as one of her four trustees.

The loss in question occurred before there was any known reason or cause for the defendants to interfere with Horatio's possession of the bonds and mortgages. He received the $6000, without the concurrence or knowledge of either of them, and his sole acquittance, it is conceded, was sufficient to discharge the debtor.

The law appears to be well settled that the defendants are not liable for the money which he thus received. (2 Story's Eq. s. 1281, to 1284; *Monell* v. *Monell*, 5 J. C. R. 296, 297; *Sutherland* v. *Brush*, 7 ibid. 22; and *Manahan* v. *Gibbons*, 19 Johns.

438, 440, per Kent, Chancellor ; *Leigh* v. *Barry,* 3 Atk. 584 ; Lewin on Trusts and Trustees, 269.)

There was no act or agreement in this case, within the meaning of the authorities cited on the part of the complainants, by which this money came into the hands of Horatio Wilkes.

Entertaining this view of the subject, it is unnecessary for me to examine the facts relied upon by the defendants, to show that Miss Campbell recognized Horatio Wilkes as her sole trustee, and acquiesced in his acting in that capacity.

The bill must be dismissed without costs.