JAMES S. MACDONALD AND WILLIAM J. MACDONALD v. WILLIAM HANNA AND ISABELLA MACDONALD BARNARD.

*Will—Trust—Liability of executor—Accounting.*

A husband willed all of his property to his wife, to be managed and controlled by her to the best of her judgment and ability, during her widowhood, for the benefit of their minor children. The will further provided that, if the widow should remarry, it was the will of the testator that she should thereafter take nothing by the will, but that the residue of the estate should be sold or otherwise disposed of, and the proceeds applied by her co-executor for the use and benefit of the children on their or the survivor of them arriving at full age. The widow received all of the estate, and after paying the debts and funeral expenses, and erecting a monument to her husband, invested $5,000 of the residue of $7,000 in real estate, which investment proved unfortunate, and nearly the entire amount was lost. About three years after the death of her husband the widow remarried. The children, who were respectively about 5 and 7 years of age when their father died, were prop-

erly supported and educated by their mother, and largely at her expense. After attaining their majority they filed a bill for an accounting against their mother and the executor. The bill was dismissed as to the executor, and a decree entered against the mother for $2,500, from which decree complainants, alone, appealed. And, on affirming the decree, it is held:

*a*—That, whatever may have been the moral obligation of the executor to accept the trust set forth in the will, and look after the interests of the children, there was no legal duty imposed upon him, and he could only be held in so far as he received and misappropriated the funds.

*b*—That there was no obligation, either moral or legal, resting upon the executor, to assume the responsibility of the execution of the trust until after the widow's remarriage, and he could not be held liable for any misappropriation of the funds by her prior to that event; nor was he compelled, upon her remarriage, to demand from her the administration of the trust.

*c*—That it is manifest from the evidence that the children were well treated and cared for by their mother, and it would be inequitable to deprive her of a reasonable allowance for that purpose; that during her widowhood, the income from the estate being insufficient, she possessed the right, under the will, to encroach upon the principal; that it is evident that she had no comprehension of business affairs, and did not appreciate the necessity of keeping strict account of her receipts and expenditures; that, while it is unfortunate that the surrogate court failed to call her to an accounting, no evidence of bad faith, or any disposition on her part to defraud the children, is found, and the Court are not disposed to modify the decree of the court below.

Appeal from Wayne. (Reilly, J.) Submitted on briefs April 6, 1894. Decided May 22, 1894.

Bill for an accounting. Complainants appeal. Decree affirmed. The facts are stated in the opinion.

*Sands F. Moore* (*Alfred Lucking*, of counsel), for complainants.

*John H. Bissell* (*Otto Kirchner*, of counsel), for defendant Barnard.

*James C. Smith, Jr.* (*Otto Kirchner*, of counsel), for defendant Hanna.

GRANT, J. Complainants are the children of John Mac-Donald, deceased, and defendant Barnard. MacDonald died testate at Windsor, Ontario, January 15, 1870. His will reads as follows:

"*First.* All my real and personal estate, of any nature and kind whatsoever, and wheresoever situate, I give, devise, and bequeath unto my beloved wife, Isabella Mac-Donald, in the hope that she will manage and control the same to the best of her judgment and ability, during her widowhood, for the benefit of my children, James Sherman and William John MacDonald. And, in the event of my said wife marrying again, my will is that she shall take nothing by this will after she so again marries, but that the residue of my real estate and personal estate, or any real or personal estate acquired by her through or by the above bequest, be sold or otherwise disposed of, and the proceeds or profits arising thereout be applied by William Hanna, one of my executors hereinafter named, for the use and benefit of my children before named when they each, or the survivor, attains the age of 21 years.

"And I enjoin upon my said wife the maintenance, education, and support of my said children.

"And I hereby appoint my said wife and William Hanna, of the city of Detroit, executors of this, my last will."

The defendants petitioned the surrogate court of the county of Essex, January 26, 1870, for the probate of the will. On the same day each filed a separate affidavit, stating that he was one of the executors of the will, and that he would faithfully administer the personal estate and effects of the testator by paying his just debts and the legacies contained in the will, so far as the same would thereunto extend and the law bind him, and that he would exhibit a true and perfect inventory of all and singular the personal estate and effects, rights and credits, of the

said·testator, and render a just and true account of his executorship, as required by law. January 20, 1870, defendant Hanna filed an affidavit, stating that he was one of the executors named in said will, and that the personal estate and effects of the deceased were of about the value of $17,068. February 8, 1870, letters of administration were issued. A statement was filed in the surrogate court showing the assets to be $17,068.26, and liabilities $10,-441.71. In this statement the book accounts were stated at $7,432.79. Defendant Hanna, as executor, received none of the funds belonging to the estate, except that at one time he borrowed from the widow $2,000, for which he gave his note, and which he subsequently paid to her. Defendant Barnard received all the funds. Neither gave a bond, nor was any account ever filed by either in the surrogate court.

MacDonald was engaged in the business of manufacturing tobacco. March 3, 1870, Mrs. MacDonald sold the business, and after paying the debts, etc., she had on hand, belonging to the estate, about $5,500. This she brought to Detroit, and converted into American money, which yielded about $7,000. At the time of the death of Mr. MacDonald, complainants were, respectively, about seven and five years of age. Upon her marriage to Mr. Barnard, she moved with him to L'Anse, Mich., where they resided until the complainants grew up and left home. In so far as any further statement of facts is necessary, it will be given in connection with the points raised.

Complainants allege that they first learned of their father's will, and the amount of property he left, in the year 1889; that they caused investigation to be made, which consumed some time; that their mother refused an accounting, and therefore they filed this bill. The case was heard upon pleadings and proofs taken in open court, and a decree was entered dismissing the bill as to defend-

ant Hanna, and against the defendant Barnard for the sum of $2,500. Complainants, alone, appeal.

1. The decree in favor of defendant Hanna must be sustained. Whatever may have been his moral obligation to accept the trust set forth in the will, and to look after the interests of the children, there was no legal duty imposed upon him, and he could only be held in so far as he received and misappropriated the funds. It is manifest from the terms of the will that Mr. MacDonald intended that, until his wife remarried, she should have the management and control of the estate. It cannot be said that there was any obligation, either moral or legal, resting upon Hanna, to assume the responsibility of the execution of the trust until after her remarriage. He certainly could not be held liable for any misappropriation of the funds by her during that time. Neither was he compelled, upon her remarriage, to demand from her the administration of the trust. The authorities are clear that he cannot be held, under such circumstances. *Edmonds v. Crenshaw,* 14 Pet. 166; *Cocks v. Haviland,* 124 N. Y. 426; *McKim v. Aulbach,* 130 Mass. 481; *Sparhawk v. Buell,* 9 Vt. 41; *Manahan v. Gibbons,* 19 Johns. 427; *Wilson's Appeal,* 115 Penn. St. 95.

2. Mrs. Barnard kept no books of account, nor has she ever rendered an account of her doings to the surrogate court. The bookkeeper who made out the inventory of the estate is dead. So, also, are others who had knowledge of Mr. MacDonald's affairs. The books have been lost. Mr. MacDonald evidently did a prosperous business during his lifetime, and provided liberally for his family. Some of the household goods which were her property were included in the inventory as belonging to the estate. It seems quite probable from her own testimony that Mrs. Barnard, during her widowhood, lived in a style commensurate with her former living, rather than in one suitable to her altered

condition and limited means.   She paid the funeral expenses and the expenses of his last sickness, and also erected a monument, at a cost of about $300.   She testified that it cost her about $125 per month to support herself and the children during her widowhood.   At the time of her remarriage she supported the children for a short time at her sister's, and then took them to her home at L'Anse, paying the expenses of the trip.   She invested $5,000 out of the $7,000 in real estate in Detroit.   This investment proved unfortunate, and nearly the entire amount was lost.   The complainants lived for many years with their mother and stepfather, were sent to school, and were properly clothed and supported.   Their stepfather secured them positions upon the railroad.   James went to Marquette, but did not earn sufficient to pay his board.   His mother paid the deficiency, and furnished him with clothing.   It is unnecessary to review all the evidence in the case bearing upon the expenditures of the mother in behalf of the complainants.   It is manifest that they were well treated, well taken care of, and largely at her expense.   It would not be equitable to deprive her of a reasonable allowance for that purpose.   During her widowhood the income from the estate was not sufficient, and she possessed the right, under the will, to encroach upon the principal.   It is evident that she had no comprehension of business affairs, and did not appreciate the necessity of keeping a strict account of her receipts and expenditures.   It is also unfortunate that the surrogate court did not call her to an accounting.   But we find no evidence of bad faith, nor any disposition to defraud her children.   After a careful examination of the record, we are not disposed to modify the decree of the court below.

Decree affirmed, with costs.

The other Justices concurred.